IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN HARDICK,

                     Plaintiff,

  v.                                                                    OPINION and ORDER

BENJAMIN CRIPE and                                     23-cv-550-jdp
CITY OF MADISON,[1]

                     Defendants.

---

When plaintiff John Hardick's daughter was involved in a car accident, Hardick came to the scene of the accident to help her. City of Madison police officer Benjamin Cripe responded to the accident. Cripe called a tow truck to tow the damaged car away, but Hardick wanted to arrange a different tow truck that would be covered by his insurance. Cripe attempted to hurry Hardick along, leading to a testy exchange that ended with Cripe ordering Hardick to get into Hardick's vehicle and sit there or go to jail.

Hardick asserts claims under the First and Fourth Amendments. He contends that Cripe unreasonably seized him by ordering him to get into his vehicle or go to jail, and that the seizure was in retaliation for Hardick's speech criticizing Cripe. Both sides move for summary judgment. Hardick asks for partial summary judgment that Cripe unreasonably seized him. Cripe asks for summary judgment that he did not unreasonably seize Hardick, that he did not retaliate against him, and that even if he did, he is entitled to qualified immunity.

---

[1] Hardick names the City of Madison as a defendant solely for the purpose of indemnification. Defendants do not contest the city's presence in the lawsuit and this court has allowed plaintiffs to proceed against municipal defendants for that purpose. *See Lewis v. Columbia Cnty.*, No. 23-CV-77-jdp, 2024 WL 1833817, at *6 (W.D. Wis. Apr. 26, 2024). The court will keep the city in the case but will not identify it as a defendant at trial.

The court will grant Hardick's motion and deny Cripe's. Whether an unreasonable seizure occurred is an objective inquiry. The undisputed facts show that Cripe seized Hardick by forcing him to sit in his car on threat of arrest, and that he did not have reasonable suspicion that Hardick had engaged in unlawful activity. The seizure occurred immediately after Hardick had criticized him, so a reasonable jury could conclude that Cripe did it in retaliation for Hardick's protected speech. And the unconstitutionality of Cripe's actions was clearly established, so Cripe is not entitled to qualified immunity. The case will proceed to trial on Hardick's First Amendment claim and on damages for Hardick's Fourth Amendment claim.

## UNDISPUTED FACTS

The following facts are undisputed.

On a late afternoon in May 2023, Plaintiff John Hardick's daughter Maria was involved in a two-car accident on Monona Drive in Madison, Wisconsin. Nobody was injured, but both cars were damaged. Defendant City of Madison police officer Benjamin Cripe responded to the accident. Plaintiff John Hardick and his wife also arrived to help their daughter. Cripe asked Hardick if they had a tow truck on the way. Hardick said no, so Cripe radioed dispatch and requested a tow truck from Schmidt's Towing. When the tow truck arrived, the driver told Hardick that the tow would cost $400. Hardick called his insurance company to see if they would cover the tow, but it told him that it would only approve a tow by AAA.

Hardick continued talking with his insurance company while Cripe wrote Maria a ticket for speeding. When he finished writing the ticket, Cripe told the Hardicks that they were free to go as long as someone remained at the scene until the vehicle was gone. For the next half

hour, Cripe waited for Hardick to find a tow truck, telling him several times that he needed to figure it out quickly because the damaged car was blocking traffic.

At this point, more than an hour had passed since the accident. The Schmidt's tow truck driver told Cripe that Hardick had said it would be another hour before he could get his own tow truck on the scene. Cripe decided to have Schmidt's take Hardick's vehicle. He approached Hardick and told him that the tow truck driver was "going to hook to your vehicle and pull it out of here or I am going to write you more tickets for impeding traffic." Hardick and the tow truck driver had a conversation about where to take the vehicle. Hardick asked if the tow truck driver could take it to a body shop on Highway 51. The tow truck driver asked for the address. Hardick replied that he "did not have the address" and started looking at his phone. After about a minute, Cripe said, "[j]ust for the record, we've been sitting here over an hour. I asked you when we first showed up to get a tow truck on the way if you need it."

Hardick and Cripe's interaction got testy. Cripe criticized Hardick for "expect[ing] us to shut down traffic for you for another hour." Hardick asked Cripe why he was "making it that narrative" and told him to try to deescalate. Cripe said that Hardick had "refused to do what I've asked you to do." Hardick told Cripe he was "being ridiculous." The following exchange ensued:

> CRIPE: Ok. We don't have time, with—
>
> HARDICK: Stop yelling at me! Please!
>
> CRIPE: I'm trying to talk over you – I'm trying to—.
>
> HARDICK: Stop. I don't wanna talk to you no more.
>
> CRIPE (pointing toward Hardick's vehicle): Ok. Then get back in your vehicle and sit.
>
> HARDICK: I don't want to talk no more.

3

> CRIPE (raising voice): Go back to your vehicle and sit!
>
> HARDICK (stepping back): What laws did I—
>
> CRIPE (stepping toward Hardick): Get in your vehicle and sit, or you're going to jail! That is your choice.

Hardick turned around and placed his hands behind his back as if being handcuffed. Cripe did not touch Hardick, but said the following:

> CRIPE: Are you refusing to get back in your vehicle?
>
> HARDICK: You just said I'm going to jail.
>
> CRIPE: Are you refusing to get back in your vehicle? I said get back in your vehicle or you're going to jail.
>
> HARDICK: Why are you yelling at me?
>
> CRIPE: Alright get back in your vehicle right now or you are going to jail.

Hardick walked away from Cripe and got into his vehicle. Cripe told the tow truck driver to hook to Hardick's vehicle and remove it. Hardick waited in his vehicle for about fifteen minutes while the tow truck driver towed the damaged car away. Cripe then came to the passenger window and told Hardick he was "free to go."

ANALYSIS

Hardick asserts that Cripe violated his constitutional rights by subjecting him to an unreasonable seizure in violation of the Fourth Amendment and by retaliating against him for protected speech in violation of the First Amendment. To hold Cripe individually liable under 42 U.S.C. § 1983, Hardick must establish both that Cripe violated his constitutional rights and that Cripe is not entitled to qualified immunity. To defeat qualified immunity, Hardick must show that the unlawfulness of Cripe's conduct was clearly established at the time of the

4

constitutional violation. *Bradley v. Vill. Of Univ. Park, Illinois*, 59 F.4th 887, 904 (7th Cir. 2023) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 62–63).

A. **Unreasonable seizure**

Hardick's first claim is that Cripe subjected him to an unreasonable seizure in violation of the Fourth Amendment when he ordered him to sit in his vehicle or go to jail. Both parties move for summary judgment on Hardick's Fourth Amendment claim. Hardick contends that the undisputed facts establish that he was seized without justification. Cripe contends that he didn't seize Hardick and, alternatively, that the seizure was justified. Cripe also contends that he is entitled to qualified immunity.

1. Seizure

A person is seized under the Fourth Amendment when an officer restrains the person's freedom of movement by means of intentional force or other show of authority. *Terry v. Ohio*, 392 U.S. at 19 n. 16. In evaluating whether a person was seized, courts look at factors such as the number of officers, the display of weapons, physical touching, use of forceful language, tone of voice, police statements suggesting that the person is suspected of a crime or otherwise not free to leave, efforts by the police to restrict the person's movement, and whether the location is public or private. *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015). These factors are not exhaustive. The key question is whether an officer's behavior was objectively coercive, or, in other words, "whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994) (quoting *Florida v. Bostick*, 501 U.S. 429, 435–36 (1991)).

The court concludes that Cripe seized Hardick by restraining him inside his vehicle on threat of arrest. This is not a close case. By telling Hardick three times to "get in his vehicle

and sit" or "you're going to jail," Cripe presented Hardick with a choice between two options. He could either sit in his vehicle until Cripe told him otherwise, or he could be arrested. No reasonable person would feel free to ignore Cripe's order when faced with that choice.

*Belcher v. Norton* provides further support. 497 F.3d 742 (7th Cir. 2007). Belcher went to a tow yard to retrieve some personal belongings from his car, which had been impounded. He did not have money to pay the impoundment fee. Police arrived and told Belcher that he could not leave the tow yard until he signed over the title to his car. *Id.* at 745–46. They threatened to arrest him if he did leave. *Id.* The court concluded that the officers seized Belcher, because they forced him either to stay on the scene or be arrested. *Id.* at 748. Cripe offered Hardick the same choice: either to accept a restraint on his liberty by sitting in his vehicle or have a restraint on his liberty forced upon him by being arrested.

Cripe says *Belcher* is distinguishable because the officers in *Belcher* wanted to keep Belcher on the scene, but Cripe wanted Hardick to leave. Cripe points out that he had told the Hardicks that they could leave when he finished writing Maria's ticket, and the only reason they hadn't left was because Hardick was delaying the tow truck. But Cripe misses the key point. Although Cripe had previously told Hardick he was free to leave, no reasonable person in Hardick's position would have felt free to leave *in the moment* when Cripe told Hardick to get into his vehicle or go to jail.

Nor does qualified immunity protect Cripe. The constitutional principle here is clear: a seizure occurs when an officer induces a person's compliance with an objectively coercive show of authority. *See, e.g.*, *Kernats*, 35 F.3d at 1177. Any reasonable officer would know that it is objectively coercive to force someone to sit in a confined space on threat of arrest, particularly in light of *Belcher*.

6

**2. Justification for the seizure**

Cripe contends that he was justified in seizing Hardick for three reasons. First, Cripe asserts that he had probable cause, or at least reasonable suspicion, that Hardick had violated the law. Cripe says that Hardick was obstructing his efforts to clear the accident scene and violating traffic laws prohibiting parking on certain roads and requiring individuals to obey lawful commands from officers.

Cripe had no basis for probable cause or reasonable suspicion. Traffic laws prohibiting parking in certain areas have exceptions for disabled vehicles, so Cripe cannot rely on those laws as a basis for reasonable suspicion. Wis. Stat. § 346.50(1)(a). Nor can he rely on obstruction laws, because there is no evidence that Hardick obstructed Cripe or disobeyed his orders. Hardick didn't object when Cripe told him that Schmidt's Towing was going to take the damaged car. In fact, Hardick was working with the tow truck driver to figure out where to take the damaged car when Cripe ordered him to sit in his vehicle or go to jail.

Second, Cripe asserts that the seizure was justified under Wisconsin's "community caretaker" doctrine because Cripe was acting to protect the public by clearing an accident scene. Under Wisconsin's application of the community caretaker doctrine, an officer doesn't need a warrant, probable cause, or reasonable suspicion for a search or seizure if he meets two requirements: (1) the officer was exercising a bona fide community caretaker function; and (2) the public interest outweighs the intrusion upon the privacy of the individual such that the community caretaker function was reasonably exercised. *State v. Pinkard*, 2010 WI 81, ¶ 29, 327 Wis. 2d 346, 785 N.W.2d 592.

Cripe's community caretaker argument runs into the same problem as his reasonable suspicion argument. The only risk he identifies to the public is that the damaged car was

7

blocking traffic. But Hardick wasn't preventing Cripe from clearing the damaged car; in fact, he had just consented to have Schmidt's Towing take the car when Cripe threatened to arrest him. Cripe could have removed the vehicle without seizing Hardick, so the seizure was not justified by the public interest in clearing the accident scene.

Third, Cripe contends that any restriction on Hardick's freedom was a "de minimus" intrusion, which was not serious enough to implicate the Fourth Amendment. Cripe relies on Supreme Court precedent holding that an officer can ask someone who has been lawfully stopped to step out of their vehicle. *E.g., Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (request to step out of vehicle is a "minor inconvenience" that does not violate constitutional rights). But the *Mimms* Court based its decision on two factors that are not present here: first, that the individual had already been lawfully stopped based on reasonable suspicion, and second, that the intrusion was justified based on "legitimate concerns for the officer's safety." *Id.* As previously explained, Cripe did not have any reason to suspect Hardick of unlawful activity. Nor did Cripe have any legitimate concerns about his own or public safety, because Hardick had already consented to have the damaged car towed.

As for qualified immunity, the question is whether a reasonable officer could have believed that a seizure was justified by reasonable suspicion or by the community caretaker doctrine or the "de minimus" rule. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 576. But this is not a close case in which an officer could have made a good-faith error of judgment on whether the seizure was justified. Because Hardick had consented to having the damaged vehicle removed before the seizure occurred, Cripe did not even have an arguable reason to believe that Hardick had done anything unlawful or that Hardick posed a danger to him or to the public.

8

### B. Retaliation

Hardick asserts a claim for First Amendment retaliation, contending that Cripe seized him in retaliation for his protected speech. A retaliation claim has three elements: (1) the individual engaged in constitutionally protected speech; (2) he suffered an adverse action likely to deter such speech; and (3) his protected speech was at least a motivating factor for the adverse action. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Cripe moves for summary judgment on this claim, contending that the undisputed facts negate each of the three elements. The court is not persuaded; the First Amendment claim will have to be resolved at trial.

As for the first element, Hardick engaged in protected speech when he told Cripe that he was "being ridiculous," that he was making a false "narrative," and that he should try to "deescalate." *See Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) ("The First Amendment protects even profanity-laden speech directed at police officers.").

As for the second element, Hardick suffered an adverse action when Cripe threatened to arrest him if he didn't return to his vehicle. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004) (realistic threats of arrest are adverse actions likely to deter an ordinary person from speaking).

The third element, causation, is genuinely disputed. A reasonable jury could find that Hardick's speech motivated the adverse action, for two reasons. First, Cripe threatened Hardick with arrest only seconds after Hardick criticized him. A reasonable jury can infer retaliation from an adverse action that follows so closely on the heels of protected speech. *See Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). Second, a reasonable jury could doubt Cripe's explanation for why he threatened to arrest Hardick. Cripe says that Hardick was

9

delaying the tow truck. But a reasonable jury could find that this was not the true reason for the threat, because Cripe threatened to arrest Hardick only after Hardick had consented to allow the tow truck to take the damaged car.

Cripe is not protected by qualified immunity from Hardick's First Amendment claim. Cripe's qualified immunity argument rests on his assertion that he had at least arguable reasonable suspicion or probable cause. But the court has already determined that Cripe lacked even arguable suspicion that Hardick had done anything unlawful.

ORDER

IT IS ORDERED that:

1. Plaintiff John Hardick's motion for partial summary judgment, Dkt. 15, is GRANTED as for plaintiff's Fourth Amendment claim for unreasonable seizure.

2. Defendants' motion for summary judgment, Dkt. 20, is DENIED.

3. This case will proceed to trial on plaintiff's First Amendment claim and on damages for plaintiff's Fourth Amendment claim.

Entered January 10, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge